UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

        - v. -                    :          07 Cr.  03-10 (LAP)
                                                      18 Civ.  1856 (LAP)

DELROY LEE,                                          :

        Defendant.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR
<u>CORRECT HIS CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255</u>**


GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
Attorney for United States of America


Ryan B. Finkel
Assistant United States Attorney
    - Of Counsel -

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

   I.   THE INDICTMENT AND CHARGES ............................................................... 2

   II.   THE TRIAL ........................................................................................................ 3

      A.   The Government's Case ............................................................................... 3

         1.   The Narcotics Conspiracy ................................................................ 3

         2.   Robbery and Murder of Patrick Taylor .......................................... 5

         3.   Murder of Bunny Campbell .............................................................. 7

   III.   THE VERDICT AND SENTENCING ............................................................. 8

   IV.   THE APPEAL ................................................................................................... 9

   V.   THE PETITIONER'S MOTION .................................................................... 11

      A.   Petitioner's Claims ................................................................................... 11

      B.   Trial Counsel's Affidavit ......................................................................... 12

ARGUMENT ................................................................................................................... 13

   I.   PETITIONER'S DOUBLE JEOPARDY CLAIMS FAIL ............................... 13

      A.   Applicable Law ......................................................................................... 13

      B.   Argument .................................................................................................. 15

         1.   The Petitioner's Double Jeopardy Argument is Procedurally   Barred .................... 15

         2.   Count 16 is Not a Lesser Included Offense of Count 17 ............................................ 16

         3.   Sentencing on Counts 24 and 25 Do Not Violate Double Jeopardy ........................ 17

   II.   HOBBS ACT ROBBERY AND ATTEMPTED HOBBS ACT ROBBERY ARE CRIMES OF VIOLENCE ........................................................................... 18

   III.   PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS FAIL .......... 18

      A.   Applicable Law ......................................................................................... 18

      B.   Argument .................................................................................................. 19

         1.   Petitioner's Ineffective Assistance of Counsel Claim for Failure to  Investigate an Alternative Suspect is Meritless ........................................................................... 19

         2.   Petitioner's Claims of Ineffective Assistance Regarding the  Prosecution's Actions and Jessica Parchment's Non-Prosecution Agreement Fail ........................... 21

         3.   Petitioner's Ineffective Assistance Claim Alleging Erroneous Advice Caused Rejection of the Plea Agreement .............................................................................. 24

         4. Petitioner's Ineffective Assistance Claim Regarding the Dismissed Robbery Charges Fails .................................................................................................................. 27

CONCLUSION ................................................................................................................ 29

i

# TABLE OF AUTHORITIES

**Cases**

*Aeid v. Bennett*, 296 F.3d 58, 63 (2d Cir. 2002) ...................................................... 24, 25

*Albernaz v. United States*, 450 U.S. 333 (1981) ............................................................ 14

*Brown v. United States*, 2018 U.S. Dist. LEXIS 72014 (S.D.N.Y. Apr. 30, 2018)..................... 17

*Coppedge* v. *United States*, 369 U.S. 438, 445 (1962.) ................................................ 29

*Cruz v. Scully*, 716 F. Supp. 766 (S.D.N.Y. 1989) ......................................................... 22

*Davis v. Greiner*, 428 F.3d 81 (2d Cir. 2005)................................................................ 24

*Eze v. Senkowski*, 321 F.3d 110 (2d Cir. 2003) ............................................................ 29

*Gluzman v. United States*, 124 F. Supp. 2d 171 (S.D.N.Y. 2000).................................... 25

*Gonzalez v. United States*, 722 F.3d 118 (2d Cir. 2013) ............................................... 29

*Greiner v. Wells*, 417 F.3d 305 (2d Cir.2005)............................................................... 20

*Harrington v. Richter*, 562 U.S. 86 (2011) ................................................................... 19

*Kimmelman v. Morrison*, 477 U.S. 365 (1986)............................................................... 20

*Lafler v. Cooper*, 566 U.S. 156 (2012) .................................................................. 24, 27

*Lee v. United States*, 137 S. Ct. 1599 (2017).................................................................. 10

*Lewis v. United States*, 523 U.S. 155 (1998) ................................................................. 14

*Loliscio v. Goord*, 263 F.3d 178 (2d Cir. 2001) ............................................................ 21

*McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429 (1988)....................... 27

*Mui v. United States*, 614 F.3d 50 (2d Cir. 2010)....................................................... 28, 29

*Ogando v. United States*, 8 F. App'x 109 (2d Cir. 2001) ............................................... 15

*Page v. Martuscello*, No. 10 CIV. 9699 JSR AJP, 2011 WL 3678820
    (S.D.N.Y. Aug. 23, 2011) ................................................................................ 26

*Pham v. United States,* 317 F.3d 178 (2d Cir. 2003) ...................................................... 25

*Purdy v. U.S.*, 208 F.3d 41 (2d Cir. 2000) .............................................................. 25, 26

*Rompilla v. Beard*, 545 U.S. 374 (2005)...................................................................... 20

*Rutledge v. United States*, 517 U.S. 292 (1996) ........................................................... 17

*Strickland v. Washington*, 466 U.S. 668 (1984) ........................................... 18, 19, 24, 29

*Underwood v. United States*, 166 F.3d 84 (2d Cir. 1999) ..................................... 15, 16, 17

*United States v. Aguirre*, 912 F.2d 555 (2d Cir. 1990).................................................. 19

*United States v. Allen*, 247 F.3d 741 (8th Cir. 2001).................................................... 15

*United States v. Barnes*, 560 F. App'x 36 (2d Cir. 2014)............................................... 15

*United States v. Basciano*, 599 F.3d 184 (2d Cir. 2010) ............................................... 14

*United States v. Battle*, 289 F.3d 661 (10th Cir. 2002).................................................. 15

*United States v. Berrios*, 676 F.3d 118 (3rd Cir. 2012) ........................................... 15, 17

*United States v. Caputo*, 808 F.2d 963 (2d Cir. 1987)................................................... 18

*United States v. Carr*, 424 F.3d 213 (2d Cir. 2005)................................................. 23, 24

*United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992) ..................................................... 23

*United States v. Elias*, 285 F.3d 183 (2d Cir. 2002) ..................................................... 22

*United States v. Hill*, 890 F.3d 51 (2d Cir. 2018) ...................................................... 1, 18

*United States v. Julian*, 633 F.3d 1250 (11th Cir. 2011) ............................................... 15

*United States v. Lee*, 660 F. App'x 8 (2d Cir. 2016) .................................................. 10, 21, 27, 28

*United States v. Lee*, 834 F.3d 145 (2d Cir. 2016).................................................................. 10

*United States v. Luciano*, 158 F.3d 655 (2d Cir. 1998) ........................................................... 23

*United States v. Nersesian*, 824 F.2d 1294 (2d Cir. 1987) ...................................................... 23

*United States v. Nina*, No. 16-909-CR, 2018 WL 2251628 (2d Cir. May 17, 2018) .................. 16

*United States v. Pitcher,* 559 F.3d 120 (2d Cir. 2009)............................................................. 28

*United States v. Sanchez*, 790 F.2d 245 (2d Cir. 1986) ........................................................... 19

*United States v. St. Hubert*, 883 F.3d 1319 (11th Cir. 2018)................................................... 18

*United States v. Walker*, 24 F. App'x 57 (2d Cir. 2001)........................................................... 23

*United States v. Weingarten*, 713 F.3d 704 (2d Cir. 2013)....................................................... 14

*United States v. Young*, 470 U.S. 1 (1985) .............................................................................. 22

**Statutes**

18 U.S.C. § 1951............................................................................................................... 2

18 U.S.C. § 922(g) ............................................................................................................ 3

18 U.S.C. § 924(j) ........................................................................... 1, 2, 3, 14, 15, 16, 18

21 U.S.C. § 846............................................................................................. 2, 15, 16

21 U.S.C. § 848............................................................................................................... 15

21 U.S.C. § 848(e)(1)(A) ................................................................................................... 2

28 U.S.C. § 2255 ............................................................................................................... 1

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the *pro se* motion filed by Defendant Delroy Lee ("Lee" or "Petitioner") to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255 (the "Motion" or "Mot."). Petitioner raises several claims in his Motion, all of which fail. *First*, Petitioner argues his convictions under both 18 U.S.C. §§ 924(c) and (j) violate Double Jeopardy because § 924(c) is a lesser included offense. This claim is not only procedurally barred but also fails because the challenged counts punish different conduct. *Second*, Petitioner argues that Hobbs Act Robbery is not "a crime of violence" but that is wrong following *United States v. Hill*, 890 F.3d 51, 54 (2d Cir. 2018). *Third*, Petitioner claims his counsel was constitutionally ineffective in several ways: for failing to investigate an alternative suspect, (Mot. at 7-21); not introducing a non-prosecution agreement; and declining to object to the Government's summation (Mot. at 22-25). Even if Petitioner's allegations concerning these claims are credited, these decisions were reasonable, strategic calculations—not ineffective performance. And, in any event, none of the alleged errors were prejudicial. Nor is Petitioner's claim that counsel provided erroneous advice concerning a plea credible—and even if it was, Petitioner fails to allege that the legal advice was faulty. Finally, Petitioner claims counsel was ineffective in his failure to investigate the pre-trial dismissal of certain robbery charges. (First Am. Mot. at 1.) This claim is, *inter alia*, procedurally barred because the underlying facts were raised and addressed by the Second Circuit on appeal. In sum, no hearing is needed to deny the Petitioner's Motion.

1

## STATEMENT OF FACTS

### I.     THE INDICTMENT AND CHARGES

Superseding Indictment S4 07 Cr. 3 (BSJ) (the "Indictment") was filed on February 20,

2008, charging Petitioner and twenty-two other members and associates of a violent criminal

enterprise identified in the Indictment as the DeKalb Avenue Crew.[1]

As relevant to the instant motion, Count Six charged Hisan Lee, Petitioner, and Selbourne

Waite with participating in a narcotics distribution conspiracy, in violation of 21 U.S.C. § 846.

Count Seven charged Hisan Lee and Petitioner with the murder of Patrick Taylor in connection

with a drug crime, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2.  Count Eight

charged all four defendants with participating in a robbery conspiracy, in violation of 18 U.S.C.

§ 1951.  Count Twelve charged Petitioner and Selbourne Waite with robbery, in violation of 18

U.S.C. §§ 1951 and 2.  Count Sixteen charged Hisan Lee, Petitioner, and Selbourne Waite with

the use, carrying, and possession of firearms during and in relation to the narcotics conspiracy

charged in Count Six, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.  Count Seventeen

charged Hisan Lee and Petitioner with the murder of Patrick Taylor through the use of a firearm

in connection with the narcotics conspiracy charged in Count Six, in violation of 18 U.S.C. §§

924(j)(1) and 2.  Count Twenty-Two charged Petitioner and Selbourne Waite with the use,

carrying, possession, and brandishing of a firearm during and in relation to the robbery charged

---

[1] In order to remove counts in which none of the trial defendants were charged and avoid undue speculation by the jury, a redacted and sequentially re-numbered indictment (the "Redacted Indictment" or "Red. Indict.") was provided to the jury during deliberations with the consent of all parties. (Tr. at 3254; Dkt. 513; *see also* Dkt. 413.)  In his Motion, Petitioner refers to the Counts using the numbering from the Redacted Indictment.  For clarity, this Opposition Motion also uses the Redacted Indictment numbering.

in Count Twelve, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(C)(i) and 2.[2]  Count

Twenty-Four charged Petitioner and Selbourne Waite with the murder of Bunny Campbell

through the use of a firearm in connection with the attempted robbery charged in Count

Fourteen, in violation of 18 U.S.C. §§ 924(j)(1) and 2.  Count Twenty-Five charged Petitioner

and Selbourne Waite with the use, carrying, possession, and discharge of a firearm during and in

relation to the attempted robbery charged in Count Fourteen, in violation of 18 U.S.C. §§

924(c)(1)(A)(ii), 924(c)(1)(C)(i) and 2.

## II.     THE TRIAL

### A.     The Government's Case

#### 1.     *The Narcotics Conspiracy*

Evidence adduced at trial demonstrated that the DeKalb Avenue Crew was led by

members of two families: the Lee family and the Saunders family.  (Tr. at 1046-47.)[3]  The

primary drug-selling territory of the Crew was on DeKalb Avenue in the northern Bronx.

(GX90.)  Delroy Lee began selling drugs on DeKalb Avenue in the 1990s.  (Tr. at 797-98, 1882,

2241-43), and by the mid-2000s, Lee and his generation of Crew members had shifted into a

wholesale supply role with respect to the crack cocaine sales on DeKalb Avenue—drugs that

they primarily secured through drug robberies.  (Tr. at 3656-66, 3670-72, 3683-85, 3999-4006.).

Lee and his co-defendants regularly carried guns to protect their drugs while selling, and to

protect and enforce their territory.  (Tr. at 809-11, 1146-47, 2252-53.)  They also stored guns in

---

[2] In its jury instruction, the Court stated: "I instruct you that the robberies and attempted robberies alleged in the indictment qualify as crimes of violence under the law and that the narcotics conspiracy alleged in Count 6 qualifies as a drug trafficking offense."  (Tr. at 5059.)
[3] "Tr." refers to the trial transcript; "GX" refers to the Government's exhibits at trial; and "Dkt." refers to an entry in the District Court's docket for this case.

hidden locations on DeKalb Avenue, as well as in their stash houses on DeKalb Avenue.  (Tr. at 809-10, 1149.)

Lee began participating in armed robberies of drug dealers, along with many of his drug associates from the DeKalb Avenue Crew, in the early 1990s.  (Tr. at 790-93.)  Lee participated in burglaries of drug dealers' homes, during times that they knew the dealers would not be home.  (Tr. at 2234-46.).  The participation of Lee and other members of the DeKalb Avenue Crew in armed robberies, primarily of drug dealers, continued and escalated in the late 1990s and early 2000s.  (Tr. at 817-19, 848-50, 1858-63, 1864-67, 1888-90, 2217-22, 2239-41, 2253-55 ("Q. What were you planning on robbing? A. Drug dealers as usual.").)  In addition to the proof on the substantively charged robberies, the Government presented substantial evidence of the defendant's and fellow members of the DeKalb Avenue Crew drug robbery activity, including several robberies in which Lee personally participated.

For example, in June 2001, Delroy Lee and Selbourne Waite were arrested in a car with Hibah Lee on their way to a planned drug robbery of one of their crack cocaine suppliers.  (Tr. at 734-35, 2271-74.)  In the fall of 2004, on Bronx Boulevard, Delroy Lee, and others carried out a robbery at the home of a wholesale marijuana dealer, looking for large quantities of marijuana and cash. The victims were tied up, and several of the participants brandished guns, including a TEC-9 assault weapon.  (Tr. at 3055-60, 3444-49.)   In September 2006, Delroy Lee, Mark Gabriel, and Robert Morrison carried out an armed cocaine robbery on Burke Avenue in the Bronx.  They recovered 300 grams of cocaine and a .38 handgun from a safe.  (Tr. at 2351-56, 2998-3007, 3672-75; GX 701-06.)

2.      *Robbery and Murder of Patrick Taylor*

In the summer of 2000, Hisan Lee and other members of the DeKalb Avenue Crew took some of the crack Hisan Lee had purchased from Patrick Taylor, from who a majority of their cocaine was purchased, down to Virginia, where they could get a higher price than what they were making from their customers on DeKalb.  (Tr. at 803-05; 815-16; 820-22; 1896-99; 1886-88; 1895-96.)  Instead of buying the drugs from Patrick Taylor (who was known on the street as "Freddy") in relatively small amounts as they had been doing, Hisan Lee and Delroy Lee planned to rob him of a large quantity of cocaine and bring all of that cocaine to Virginia to sell.  (Tr. at 823-24; 1899.)  On August 23, 2000, Hisan Lee and Delroy Lee kidnapped Patrick Taylor.  (Tr. at 1905-06; 2266-67.)  They took Taylor to Hisan Lee's apartment and beat him and burned him with cigarettes, to learn where drugs were hidden.  (Tr. at 1906; GX 273.)  While Patrick Taylor was held captive, the Lee brothers and their accomplices went in search of Taylor's drugs and money.  (Tr. at 830; 1505-15; 1906; GX 245-266.)

Later that night in the Bronx, a man was in his living room watching television.  (Tr. at 1439.)  That man testified that he heard multiple gunshots, looked out his window and saw a white car speed off with three men inside.  (Tr. at 1439.)  He went down to the street and saw a gold car "with a man lying out of it," (Tr. at 1439), and Patrick Taylor hanging out of the car, his body bloody and riddled with gunshots.  (Tr. at 1441-42, 1453-64, 1542-45, 1874-80; GX 200-210, 228-244; GX 273A.)

Witnesses testified that Hisan Lee and Delroy Lee returned to DeKalb Avenue that night and the next day, weighted down with the drugs and money they had stolen from Patrick Taylor.  (Tr. at 825, 827, 1080-83, 1900-05.)  The Lee brothers both told some of the other drug dealers on DeKalb about the robbery and bragged about how they had killed Patrick Taylor.  (Tr. at 827,

5

835, 1905-09, 2264-65.)  Cooperating witness Keith Harry, for example, testified that "they were both arguing and bragging about how they had killed Freddy and how he was begging for his life."  (Tr. at 835.)

During trial, Delroy Lee was tied to the murder of Patrick Taylor in numerous ways. Cooperating witnesses Keith Harry and Andre Davidson both testified that Delroy Lee was among the members of the DeKalb Avenue Crew who used Patrick Taylor (whom they referred to as "Freddy") as their supplier for crack cocaine in 1999 and 2000.  (Tr. at 803-05, 815-16, 1886-88, 1895-96.)  Both Harry and Davidson testified that Hisan and Delroy Lee planned to rob Freddy by setting up a large order and then simply stealing the drugs, and Harry saw Hisan and Delroy Lee with Freddy on the day of the murder.  (Tr. at 823-24, 1899, 1905-06.)  Mark Gabriel testified that Delroy Lee told him afterwards that this is how they had in fact carried out the robbery.  (Tr. at 2266-67.)

Both Harry and Davidson testified about different instances of Hisan and Delroy Lee's direct admissions to their roles in the robbery and to shooting Patrick Taylor. (Tr. at 827, 835, 1905-09.)  Harry testified that Delroy and Hisan Lee took steps to change their appearance immediately after the murder because they believed police were looking for them.  (Tr. at 834-35, 840-42, 1079-80; GX 60, 61, 510.)  Multiple witnesses described Hisan and Delroy Lee's purchase of new cars with the money they had stolen from Patrick Taylor.  (Tr. at 826-27, 1108-13, 1137, 1908-09, 2267-68, 3044-46.)

Multiple witnesses described observing drugs that Hisan and Delroy Lee had stolen from Patrick Taylor, and the execution of the plan to take those drugs to Virginia to sell.  (Tr. at 851-58, 1773-93, 1918-21.)  Photographs and the testimony of multiple witnesses established that Hisan and Delroy Lee were arrested with those drugs in Virginia a few days later.  (Tr. at 859-

6

61, 1341-63, 1921-25.)  Finally, physical evidence corroborated the testimony about the admissions Hisan and Delroy Lee had made to others about what had occurred during the robbery and murder of Patrick Taylor.  (Tr. at 827,  830,  1439, 1441-42,  1453-64, 1505-15, 1542-45, 1548, 1565-73, 1662-70, 1738-43, 1874-80, 1906; GX 200-266, 273, 273A, 280.)

> 3.    *Murder of Bunny Campbell*

Bunny Campbell was known throughout the neighborhood as a marijuana salesman and lived near his mother.  (Tr. at 1533-35, 3117-23, 3965-66, 3691-92.)  Hisan and Delroy Lee knew about Campbell's business, too, and in the days leading up to April 1, 2005, they talked about how they should rob Campbell, and about how easy it would be, with Delroy Lee and his girlfriend living right on the same hallway.  And shortly before 9 p.m. on April 1, that's just what Delroy Lee did.  He robbed Campbell in his bedroom in their shared house, and a few minutes later Bunny Campbell was dead, with two bullets in the back of his head.  (Tr. at 2350-51, 3352-60, 3366-74, 3380-90, 3392-400, 3500-04, 3525-27, 3693-94, 3967-70, 4026-30; GX 300-08, 320, 324,325.)

In the search following the discovery of Campbell's body, police officers recovered a loaded handgun from a closet just outside the bedroom that Delroy Lee shared with his girlfriend; ballistics examiners matched that gun to the weapon that Selbourne Waite had discharged in a March 24, 2005 robbery on Paulding Avenue.  (Tr. at 3130-32, 3481-88, 3890-97; GX 332, 334, 326, 326A.)

During trial, Delroy Lee was tied to the murder of Bunny Campbell by the testimony of several individuals.  Jerrell Moore, Delroy Lee's bunkmate in prison, testified at length about a direct confession he received from Delroy Lee, in which Delroy Lee told him that he had robbed Bunny Campbell for guns and marijuana and that he had shot and killed Bunny in the course of

7

the robbery.  (Tr. at 4026-30.)  Moore's testimony was corroborated by the testimony of Mark

Gabriel, whom Delroy Lee told that he had committed a robbery in his girlfriend's apartment

where someone had been murdered (Tr. at 2350-51); the testimony of Dwayne Brown, who was

told by Jonathan Headley that Delroy was involved in Campbell's murder (Tr. at 3525-27); the

testimony of Lamar Sharpe, who was told by Robert Morrison (Delroy Lee's brother) that

Delroy had committed a robbery involving Campbell and had gotten five to seven guns and

$30,000 from the robbery, and later told by Delroy Lee himself that when he was brought to the

precinct after Campbell's death, "I thought they had me for Bunny's murder." (Tr. at 3693-94.)

And the testimony of Jessica Parchment,[4] the sister of Delroy Lee's girlfriend, who was sent in

the immediate aftermath of the murder to retrieve a backpack containing multiple guns from the

vestibule of Delroy Lee's mother's house, which was located right next door to the murder

scene.  (Tr. at 3967-70.)

## III.   THE VERDICT AND SENTENCING

The Petitioner was convicted by a jury on all counts.  The parties appeared before the

Court for sentencing on March 25, 2011.  In advance of sentencing, the Probation Office

prepared a Presentence Report ("PSR") that included a calculated offense level of 46, criminal

history category of I (PSR at 30, 33), and a Guidelines calculation of life imprisonment followed

by a mandatory and consecutive 50-year period of imprisonment under Counts 22 and 25.  (PSR

at 36.)  During the sentencing, the Court and the parties discussed "two issues" with the PSR.

(Sentencing Tr., March 25, 2011, Dkt. No. 496, at 3.)  First, the Court and the Government

agreed that Count 16 should be assigned a five-year mandatory consecutive term even though the

---

[4] Parchment signed a non-prosecution agreement (the "Non-Prosecution Agreement") with the
Government.

PSR had not assigned any sentence to Count 16.  (Sentencing Tr. at 3.)  Second, the Court and the Government agreed that no sentence should be imposed for Count 25 because of the "corresponding 924(j) conviction for the same underlying conduct."  (Sentencing Tr. at 3.) These changes lowered the sentence from life plus 50 years to life plus 30 years.  The defendant did not object to these changes.  (Sentencing Tr. at 4.)  The Court entered judgment on June 17, 2011, sentencing Petitioner to life imprisonment plus 30 years.  (Dkt. No. 501.)

## IV.    THE APPEAL

On June 21, 2011 Delroy Lee and codefendants filed notices of appeal.  (Dkt. No. 500.) Delroy Lee and his codefendants appealed from judgments of conviction.  On July 17, 2012, Petitioner filed an appeal brief raising a number of claims.  Petitioner subsequently filed three *pro-se* supplemental briefs.

In his initial brief (the "Defendant-Appellant Brief"), Lee argued, *inter alia*, there was legally insufficient evidence to establish his participation in the charged counts; and there was legally insufficient evidence to establish an interstate nexus for the 4061 Murdoch Avenue Robbery. (Def.-Appellant Br., No. 11-2539-cr, July 17, 2012.)  In a supplemental *pro se* brief (the "Defendant-Appellant's First Supplemental Pro-Se Brief"), Lee claimed, *inter alia*: (1) the evidence was insufficient on Count 5, (2) the district court lacked subject matter jurisdiction on Counts 17 and 24 on various theories.  (Def.-Appellant's First Suppl. Br. at 3, 11.)  Lee filed a second supplemental *pro se* brief (the "Defendant-Appellant's Second Supplemental Pro-Se Brief") arguing the district court committed plain error in failing to disqualify a juror in violation of Petitioner's Sixth Amendment rights.  (Def.-Appellant's Second Suppl. Br. at 1.)  Finally, Lee filed a third supplemental *pro se* brief (the "Defendant-Appellant's Third Supplemental Pro-Se Brief") arguing that the district court abused its discretion by not conducting an *in camera*

inspection of the relevant Government files after the Government dismissed a charge from the indictment.  (Def.-Appellant's Third Suppl. Br. at 1-3.)  Specifically, Lee took issue with the Government's dismissal of a charge for committing a robbery at 1930 Edenwald Avenue, Bronx, New York.  (Def.-Appellant's Third Suppl. Br. at 1.)

On appeal, the Second Circuit affirmed the judgment of the district court as to the petitioner.  The Circuit Court resolved the issues on appeal in a summary order, *United States v. Lee*, 660 F. App'x 8, 12 (2d Cir. 2016) (summary order), and an accompanying opinion, *United States v. Lee*, 834 F.3d 145, 149 (2d Cir. 2016).  In its opinion, the Court held in relevant part: "that the evidence offered at trial to prove the interstate commerce element of the challenged Hobbs Act robbery convictions was sufficient to support the guilty verdicts, because the evidence permitted the jury to conclude beyond a reasonable doubt that the robberies targeted suspected marijuana dealers for their drugs or the proceeds from the sale of drugs."  834 F.3d at 149.  In its summary order, the Court, in relevant part: (1) upheld the district court's denial of Delroy Lee's suppression motions, (2) held "district court … did not err ... in declining to review the government's files" related to dismissed charges, 660 F. App'x at 15, (3) held that the evidence as to all challenged counts was sufficient to support conviction, (4) the district court did not lack jurisdiction over the 18 U.S.C. §§ 924(j)(1) and (2) counts, and (5) upheld the district court's various trial rulings.  *Id*. at 8-20.  On April 17, 2017, the Supreme Court denied Lee's petition for a writ of certiorari.  *Lee v. United States*, 137 S. Ct. 1599 (2017).

## V.      THE PETITIONER'S MOTION

### A.      Petitioner's Claims

Lee filed his Motion on February 28, 2018.  Lee filed additional, amended petitions on

April 3, 2018 (the "First Amended Motion" or "First Am. Mot.") and June 4, 2018 (the "Second

Amended Motion" or "Second Am. Mot.")

Petitioner raises several claims in his Motion that the Government has reordered in this

brief for logical presentation.  *First*, Petitioner argues his 18 U.S.C. § 924(c) convictions are

lesser included offenses of his 924(j) convictions and thus violate Double Jeopardy.  (Mot. at 3.)

*Second*, that Hobbs Act Robbery is not "a crime of violence" in light of *Johnson*, 135 S.Ct. 2551

(2015).  (Mot. at 26.)  *Third*, Petitioner argues counsel was ineffective for failing to introduce

witness Jessica Parchment's non-prosecution agreement and failing to object to the prosecution's

statements regarding Parchment and Mark Gabriel.  (Mot. at 22-25.)  *Fourth*, Petitioner argues

his trial counsel's erroneous advice caused the Petitioner to reject a favorable plea.  (Mot. at 27.)

As to this fourth claim, Petitioner described the circumstances surrounding his decision to

decline a plea deal offered by the Government in an affidavit submitted with his Motion.

(Aff. at 1.)  He avers that his trial counsel, Winston Lee, advised Petitioner that the Government

offered a plea with a stipulated Guidelines range of 425-435 months and a mandatory minimum

of 384 months.  (*Id.*)  Winston Lee then "advised [Petitioner] that the prosecution's case lacked

physical evidence and that they relied heavily in their cooperators."  (*Id*. at 2.)  Petitioner claims

he described to counsel what the cooperators might be able to say: "the only knowledge that any

cooperator may have of my involvement in the charged homicides and robberies is from what

they heard from either myself or my codefendants."  (*Id*.)  Petitioner claims his attorney "advised

me that I should not worry about that type of testimony because any testimony given by the

cooperators regarding what they heard from either myself or other codefendants were only hearsay statements if those cooperators were not there to see me commit those crimes." (*Id*.) Petitioner further claims that "Winston Lee said in a laughing manner that with that type of evidence I should be considering going to trial because without separate physical evidence to confirm the cooperator's testimony the government would not be able to establish a conviction." (*Id*.) At the same time, according to the Petitioner, Winston Lee explained to Petitioner the mandatory life sentence he would receive if he lost at trial. (*Id*.)

On or about February 2, 2010, Petitioner was set to appear in court to accept the plea. (*Id*.) "However, after contemplating on Attorney's [sic] Winston Lee's advice regarding the cooperator's testimony being hearsay ... [he] thought [he] had a good chance of winning at trial," according to Petitioner. (*Id*.) Petitioner then refused to go to court to enter a guilty plea and instead decided to go to trial. (*Id*.) Petitioner rests this refusal to appear in court solely on counsel's advice regarding hearsay testimony. (*Id.*)

*Fifth*, Petitioner's First Amended Motion claims ineffective assistance for counsel's failure to investigate the prosecution's pre-trial dismissal of counts relating to the robbery of 1930 Edenwald Avenue. (First Am. Mot. at 1.) *Sixth*, Petitioner's Second Amended Motion claims ineffective assistance for counsel's failure to object to jury instructions that said Hobbs Act Robberies were crimes of violence. (Second Am. Mot. at 1.)

### B.   Trial Counsel's Affidavit

In response to Petitioner's Motion, the Court ordered his trial counsel, Winston Lee, to file an affidavit addressing the allegations of ineffective assistance of counsel made by Petitioner. (Dkt. No. 739.) Winston Lee filed his affidavit on July 3, 2018 (Dkt. 748, "Atty Decl."). In the affidavit, trial counsel responded to each of Petitioner's ineffective assistance of

12

counsel claims.  In response, Winston Lee declared: "[t]he sentences imposed on Count 16 and

Count 25 of the trial indictment did not violate existing federal law."  (*Id*. at 3.)  Winston Lee

further swore that "defense was assisted by an experienced investigator" and that "Petitioner and

I reached an agreement and made a strategic decision to present our trial defense in connection

with the Bunny Campbell murder charges in exactly the manner that we did."  (*Id*.)  Further, the

defense presented was "the most focused and effective defense theory to present at trial."  (*Id*.)

Lee asserted that: "[i]t was decided, for strategic reasons, that we would not cross examine

Jessica Parchment on her Non-prosecution agreement because it could also have a detrimental

impact, including having the effect of enhancing her credibility and her incentive to tell the

truth."  (*Id*. at 4.)  Trial counsel "categorically denie[d] that he ever gave any of the erroneous

advice or 'assurances' that Petitioner describe[d]."  (*Id*. at 5.)  As to the First Amended Motion,

counsel asserted he "fully investigated and litigated all aspects of the May 4, 2005 robbery

charges," and that "it was a deliberate tactical decision" not to "open the door to damaging

testimony."  (*Id*. at 6.)  And, finally, trial counsel responded to the Second Amended Motion by

stating: "[t]he jury instructions were consistent with existing federal law."  (*Id*. at 7.)

## ARGUMENT

## I.    PETITIONER'S DOUBLE JEOPARDY CLAIMS FAIL

Petitioner contends that his convictions on Counts 16 and 25 under § 924(c) must be

vacated because they are lesser included offenses of his § 924(j) convictions on Counts 17 and

24, respectively.  (Mot. at 3.)  Petitioner's argument is procedurally barred and legally flawed.

### A.    Applicable Law

The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be

subject for the same offence to be twice put in jeopardy of life or limb," U.S. Const. amend. V,

and prohibits multiple punishments for the same offense.  *United States v. Weingarten*, 713 F.3d

704, 708 (2d Cir. 2013).  *Blockburger*, 284 U.S. at 304, provides the relevant test for analyzing

whether offenses are the same in law, which is "a rule for divining congressional intent."

*Weingarten,* 713 F.3d at 708 (quoting *United States v. Basciano*, 599 F.3d 184, 196-97 (2d Cir.

2010) and *Lewis v. United States*, 523 U.S. 155, 182 (1998) (quotations omitted).)  The Second

Circuit explained:

> The *Blockburger* inquiry asks whether each offense contains an element not
> contained in the other, and provides that, if not, they are the same offence
> and double jeopardy bars additional punishment and successive
> prosecution.  If each section requires proof of at least one fact that the other
> does not, there are two offenses, and it is presumed that the legislature
> intended to authorize prosecution and punishment under both. In that
> circumstance, the imposition of multiple punishments does not violate the
> Double Jeopardy Clause.

*Weingarten*, 713 F.3d at 708 (citations and quotations omitted).  As the Supreme Court explained

in *Albernaz v. United States*, "[i]t is well settled that a single transaction can give rise to distinct

offenses under separate statutes without violating the Double Jeopardy Clause." 450 U.S. 333,

344 n.3 (1981) (citations omitted).

While the Second Circuit has not directly addressed the issue of whether the Government

may bring separate charges under §§ 924(c) and 924(j) alleging distinct criminal acts in

connection with the same predicate offense, its reasoning in *Young* is instructive. 561 F. App'x at

94 ("[Section] 924(j)'s authorization of the death penalty and life imprisonment likely indicates

that it is a stand-alone offense . . . .").  Moreover, in a recent summary order, although the

Second Circuit explicitly addressed arguments regarding multiple 924(c) counts contained in the

operative indictment, it took no issue with the charging of separate Section 924(c) and 924(j)

counts in connection with the same drug conspiracy, even though the indictment failed to carve

14

out from the 924(c) count the drug-related murder which was the subject of the 924(j) count.  *See United States v. Barnes*, 560 F. App'x 36, 43 (2d Cir. 2014); *United States v. Barnes*, 11 Cr. 184 (DLC), S4 Superseding Indictment, Dkt. No. 54; *see also United States v. Julian*, 633 F.3d 1250, 1254 (11th Cir. 2011) ("Congress intended section 924(j) to define a distinct offense . . . We . . . do not consider homicide to be a 'special feature' of the way section 924(c) may be violated"); *United States v. Berrios*, 676 F.3d 118, 143 n.17 (3rd Cir. 2012); *but see United States v. Battle*, 289 F.3d 661, 666 (10th Cir. 2002) (Section 924(j) not a distinct offense but rather an enhancement for a 924(c) offense); *United States v. Allen*, 247 F.3d 741, 769 (8th Cir. 2001) (same).

**B.    Argument**

*1.    The Petitioner's Double Jeopardy Argument is Procedurally Barred*

As an initial matter, Lee is procedurally barred from bringing this Double Jeopardy challenge to his sentence because he did not raise it on direct appeal.  *See Underwood v. United States*, 166 F.3d 84, 87-88 (2d Cir. 1999) ("Absent a fundamental miscarriage of justice, a federal prisoner who fails to raise an issue on direct appeal cannot subsequently raise the issue in a § 2255 petition unless he can show cause for his failure to raise the issue on appeal."); *Ogando v. United States*, 8 F. App'x 109, 110 (2d Cir. 2001).  In *Underwood*, the defendant challenged a combined sentence after convictions for a narcotics conspiracy, 21 U.S.C. § 846, and a continuing criminal enterprise (CCE), 21 U.S.C. § 848.  While Underwood appealed his conviction, he did not raise a double jeopardy claim on appeal despite two special assessments for greater-and lesser-included offenses.  *Underwood*, 166 F.3d at 86.  The Second Circuit thus found petitioner's complaints about an improper special assessment barred.  *Id.* at 87.  Moreover,

15

petitioner could not "obtain relief on collateral review for an error that caused no prejudice." *Id.* Petitioner here, just like Underwood, failed to raise his complaints against his sentences on direct appeal.  He had "no cause for failing to raise his claim on direct appeal," and thus, "the claim is now barred." *Id.* at 88.  Even if Petitioner's claim is not procedurally barred, it fails on the merits.

### 2.     Count 16 is Not a Lesser Included Offense of Count 17

Count 16 charged Lee with possession of firearms in violation of § 924(c)(1)(A)(i) and 2 from about 1997 to 2007 in connection with Count 6, which charged a narcotics conspiracy in violation of 21 U.S.C. § 846.  Count 17 charged Lee with the death of Patrick Taylor in relation to Count 6 in violation of § 924(j)(1) and (2).  Lee's conviction and punishment on both counts does not violate Double Jeopardy as Counts 16 and 17 each "requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304.  Count 16 requires proof that Lee engaged in the use, carry, and possession of semi-automatic pistols and other firearms in the vicinity of DeKalb Avenue from about 1997 to about April 2007.  This time period is more expansive than Count 17, which only requires proof of the discharge of a firearm on August 23, 2000.  Thus, Count 16 requires proof of a broader time period than does Count 17.  Meanwhile, Count 17 requires proof of a death through the use of a firearm, which is an element not required by Count 16. *See e.g., United States v. Nina*, No. 16-909-CR, 2018 WL 2251628, at *2 (2d Cir. May 17, 2018) ("to sustain a conviction under section 924(j), the Government must prove that during and in relation to an underlying drug trafficking offense the defendant knowingly used or carried a firearm, and used that firearm to murder the victim.") (quotations and citations omitted).

In sum, Count 17 charges only the Taylor Murder, and involves an additional element not a part of Count 16, namely proof that Taylor was shot and killed, whereas Count 16 encompasses

other instances of use and possession of firearms in furtherance of the drug trafficking. Thus, the two charges punish clearly defined and distinct criminal acts. *See Young,* 561 Fed. App'x. at 93-94; *see also Berrios*, 676 F.3d at 143 (noting several "characteristics, in addition to locating § 924(j) in a wholly separate subsection rather than integrating it into § 924(c), strongly suggest that Congress intended the death of a person to be considered an element of a discrete offense — an offense provided by § 924(j).").

> 3.  *Sentencing on Counts 24 and 25 Do Not Violate Double Jeopardy*

Lee's claim that his conviction on Counts 24 and 25 implicate Double Jeopardy concerns fails because the Court did not sentence Lee on Count 25. In fact, the Court explicitly ordered "no additional sentence for Count 25." (Sentencing Tr. at 10.) *See also Brown v. United States*, 2018 U.S. Dist. LEXIS 72014, at *12 (S.D.N.Y. Apr. 30, 2018) ("imposition of 'no sentence' was a statement that no punishment would be imposed on account of the conviction for the lesser included offense"). Even if the special assessment in this case qualifies as an additional punishment, as Petitioner contends under *Rutledge v. United States*, 517 U.S. 292 (1996), the error is not prejudicial as it did not affect Petitioner's prison term. *See Underwood*, 166 F.3d at 87 (declaring that where no impact on confinement a petitioner "cannot obtain relief on collateral review"); *Monsanto v. United States*, 348 F.3d at 351-52 ("conviction does not affect the term of imprisonment, the . . . error is 'merely cosmetic.'").[5]

---

[5] Petitioner also recasts the same double jeopardy arguments as claims counsel provided ineffective assistance during sentencing for failing to object to the sentence imposed for Count 16 and the punishment for Count 25. As shown above, Petitioner's sentence is in compliance with law and thus counsel was not ineffective.

## II.     HOBBS ACT ROBBERY AND ATTEMPTED HOBBS ACT ROBBERY ARE CRIMES OF VIOLENCE

Petitioner, relying on the *Johnson* decision, claims that his convictions for Counts 22 and 25 under 18 U.S.C. § 924(c) and Count 24 under 18 U.S.C. § 924(j) must be vacated because Hobbs Act robbery does not qualify as a "crime of violence."  (Mot. at 27 (citing 135 S. Ct. 2551, 2563 (2015).)  Petitioner's position is directly at odds with Second Circuit case law decided after *Johnson*.  *See United States v. Hill*, 890 F.3d 51, 54 (2d Cir. 2018).  Under *Hill*, in this Circuit, Hobbs Act robbery is a crime of violence.  *Id.*  The same logic applies to attempted Hobbs Act robbery.  *See e.g.*, *United States v. St. Hubert*, 883 F.3d 1319, 1333 (11th Cir. 2018) ("attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause because that clause expressly includes 'attempted use' of force.").[6]

## III.    PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS FAIL

### A.     Applicable Law

A claim of ineffective assistance of counsel fails unless a petitioner (i) overcomes a "strong presumption" that his counsel's conduct was reasonable and shows that his representation "fell below an objective standard of reasonableness" under "prevailing professional norms"; and (ii) "affirmatively prove[s] prejudice," that is, shows that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984). The burden for a petitioner under the *Strickland* standard is high.  *Id* at 687.

---

[6] Petitioner's Second Amended Motion, mirrors this claims by alleging ineffective assistance of counsel for counsel's failure to object to the trial court's jury instruction that a Hobbs Act robbery is a crime of violence.  (Second Am. Mot. at 1.)  As illustrated above, that argument fails.

Under the first prong of the *Strickland* analysis, the reviewing court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). A petitioner's burden is to show "'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). A petitioner cannot prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate. *United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986).

Under the second prong, a petitioner must meet the "heavy burden" of showing "actual prejudice." *Strickland*, 466 U.S. at 692. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693). And "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693.

**B.    Argument**

1.    *Petitioner's Ineffective Assistance of Counsel Claim for Failure to Investigate an Alternative Suspect is Meritless.*

In Claim 3 of Petitioner's Motion, Petitioner claims that "counsel was ineffective for failing to investigate, pursue, and present an alternate suspect defense for the murder and robbery of Bunny Campbell." (Mot. at 1, 7.)

19

"The duty to investigate is essential to the adversarial testing process." *Greiner v. Wells*, 417 F.3d 305, 320 (2d Cir.2005) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).) "It does not, however, compel counsel to conduct a comprehensive investigation of every possible lead or defense or 'to scour the globe on the off-chance something will turn up.'" *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 383 (2005)) (citations omitted). "[R]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla*, 545 U.S. at 383.

Here, trial counsel made a strategic decision in his presentation of the defense to the Bunny Campbell murder charges. (Atty Decl. at 3 ("Petitioner and I reached an agreement and made a strategic decision to present our trial defense … in exactly the manner that we did.")) Winston Lee's declaration contradicts Petitioner's assertion that counsel "failed to investigate critical evidence." (Mot. at 8.) Defense counsel here did not neglect the evidence. To the contrary, Winston Lee "fully discussed and considered all of the evidence and all available defenses," including the evidence Petitioner describes in Claim Three. (Atty Decl. at 3.) Moreover, "[t]he defense was assisted by an experienced investigator in this case." (*Id.*) Counsel discussed all the options with the investigator and the Petitioner and "made a strategic decision to present our trial defense in connection with Bunny Campbell murder charges" as he did at trial. (*Id.*) Trial counsel's conduct in this case did not arise "from the vagaries of ignorance, inattention or ineptitude," *Greiner*, 417 F.3d at 326 (citation omitted), and thus "*Strickland*'s strong presumption must stand." *Id.*

In any event, it was not unreasonable to decline to pursue the lead that Petitioner alleges would have resulted in an alternative suspect. The letter regarding a possible suspect near the Bronx River Park suggested a man robbed individuals in parks (Attach. 1 to Mot. ("He might get

20

involved in act of gay sex and then put [sic] out gun or knife.").)  That lead is, at best, vague and tenuous, and counsel may have decided not to spend valuable time and limited resources on conducting "a comprehensive investigation of every possible lead."  *Caracappa*, 614 F.3d at 46-47 (citations omitted).

Even if the trial counsel's strategic investigation decision was unreasonable (and it was not), it was not prejudicial.  Here, considerable evidence proved Petitioner's guilt.[7]  *See e.g.*, *Loliscio v. Goord*, 263 F.3d 178, 196 (2d Cir. 2001) (noting "the considerable amount of circumstantial evidence of petitioner's guilt presented at trial" cut against a finding of prejudice). That the Second Circuit gave little credence to Petitioner's challenge to the sufficiency of the evidence on appeal emphasizes this point.  *Lee*, 660 F. App'x at 15-16.

> 2.    *Petitioner's Claims of Ineffective Assistance Regarding the Prosecution's Actions and Jessica Parchment's Non-Prosecution Agreement Fail*

In Claim Four of his Motion, Petitioner claims "counsel provided ineffective assistance by failing to object to the prosecutor's improper remarks during summation and failing to introduce Jessica Parchment's non-prosecution agreement."  (Mot. at 22.)  Petitioner's contention is that "the prosecution intentionally mislead the jury into believing that Jessica

---

[7] For example, Jerrell Moore, Petitioner's bunkmate in prison, testified at length about a direct confession he received from Petitioner.  (Tr. at 4026-30.)  Moore's testimony was also corroborated by the testimony of several other witnesses.  Mark Gabriel testified that Petitioner said he committed a robbery in his girlfriend's apartment, where someone had been murdered. (Tr. at 2350-51.)  Dwayne Brown was told by Jonathan Headley that Petitioner was involved in Campbell's murder.  (Tr. at 3525-27.)  Lamar Sharpe testified that he was told by Robert Morrison (Petitioner's brother) that Petitioner had committed a robbery involving Campbell and had gotten five to seven guns and $30,000 from the robbery, and later told by Petitioner himself that when he was brought to the precinct after Campbell's death, "I thought they had me for the murder [of Bunny]" (Tr. at 3693-94).

Parchment did not benefit from her testimony, and that she was not a cooperator…" (Mot. at 22.)  Petitioner is wrong.

*First*, Petitioner misconstrues the facts.  The Government and Parchment signed a non-prosecution agreement that agreed the Government would not prosecute Parchment for certain immigration crimes.  That the Government stated she "is not a cooperator" does not misrepresent her status.  (*See* Tr. at 4722-23.)

A non-prosecution agreement and cooperation are different.  Winston Lee states as much in his Affidavit: "I did not object to the prosecutor's remark that Jessica Parchment was not a 'cooperator' because it was accurate that she was not a 'cooperator' (as compared to the cooperators who testified in the case.)" [8]  (Atty Decl. at 4.)  Moreover, the Government was entirely upfront with the court and defense counsel.  The Government stated for the record:

> [T]he government in advance of M[s]. Parchment's testimony had given her a non-prosecution agreement related to her immigration status here. We disclosed that to defense counsel. We discussed it with Mr. Lee.  It was disclosed to all defense counsel, but we discussed it with Mr. Lee beforehand and he determined not that he did not want to cross her on it. . . .
> THE COURT:  Yes.  In fact, her agreement was part of the 3500 material which was distributed to everybody, right?
> [PROSECUTOR]:  Yes, your Honor, that's correct.

(Tr. at 3975.)

---

[8] To the extent the petitioner's ineffective counsel argument alleges prosecutorial misconduct that argument also fails.  "To warrant reversal, the prosecutorial misconduct must cause the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process."  *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002) (internal quotation marks omitted.)  "Inappropriate prosecutorial comments, standing alone, [do] not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding."  *Cruz v. Scully*, 716 F. Supp. 766, 771 (S.D.N.Y. 1989) (quoting *United States v. Young*, 470 U.S. 1, 11-12 (1985).)

Petitioner also claims that Parchment had an incentive to lie.  (Mot. at 24.)  That too is incorrect.  She testified under oath subject to penalties of perjury and, moreover, the non-prosecution agreement, which concerned immigration crimes, provided every incentive to tell the truth or it could be invalidated, thus subjecting her to federal prosecution and incarceration.

Petitioner's claim fails to overcome the high bar of *Strickland*.  Reasonably trial strategy counseled in favor of avoiding cross examination of Parchment about the non-prosecution agreement.  As trial counsel stated in his Declaration: "[i]t was decided, for strategic reasons, that we would not cross examine Jessica Parchment on her Non-prosecution agreement because it could also have detrimental impact, including having the effect of enhancing her credibility and her incentive to tell the truth."  (Atty Decl. at 4.)  That is an entirely reasonable conclusion that cannot be disturbed with the benefit of hindsight.  *See United States v. Walker*, 24 F. App'x 57, 60 (2d Cir. 2001) (noting that "failing to cross-examine certain government witnesses, and failing to make certain objections during trial" are "all examples of the kind of strategic decisions left to the discretion of the trial counsel."); *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998); *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) ("Decisions that fall squarely within the ambit of trial strategy . . . if reasonably made, cannot support an ineffective assistance claim." (internal quotation marks omitted)); *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987).

Petitioner also claims the prosecution conducted "impermissible vouching" by stating that Parchment "came in here and told the truth."  (Mot. at 25.)  Not only is this claim procedurally barred because it could have been raised on direct appeal, but Petitioner's citation to *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) undermines this argument.  *Carr* held, in part, that "[t]he government's remarks in its rebuttal summation emphasizing that the

23

cooperation agreements required that witnesses tell the truth in order to gain any benefits were also proper."  424 F.3d at 228 (2d Cir. 2005).  *Carr* also sanctioned rebuttal when "the defense continually sought to undermine the credibility of the government's witnesses."  *Id.* at 227.  But, in any event, such conduct could hardly "undermine confidence in the outcome" given the wealth of evidence.  *Strickland*, 466 U.S. at 694.[9]

### 3.    Petitioner's Ineffective Assistance Claim Alleging Erroneous Advice Caused Rejection of the Plea Agreement

"It is well settled that a defendant's Sixth Amendment right to counsel extends to plea negotiations."  *Davis v. Greiner*, 428 F.3d 81, 87 (2d Cir. 2005).  Where the allegedly ineffective advice of counsel leads to rejection of a plea deal, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."  *Lafler v. Cooper*, 566 U.S. 156, 164 (2012); *see also Aeid v. Bennett*, 296 F.3d 58, 63 (2d Cir. 2002) (noting a defendant "must demonstrate a reasonable probability that but for Counsel's errors in considering or explaining a plea offer, he would have accepted the prosecution's offer").  In

---

[9] Petitioner's Fourth Claim also argues "the prosecution intentionally misstated Mark Gabriel's testimony."  (Mot. at 25.)  That is false.  As Petitioner notes, the Government said in summation: "And remember what Saunders told him. Specs and Silky had just caught a body.  He was referring to the Bunny Campbell murder.  He said Silky was carrying the flame." (Tr. at 4630.) Mark Gabriel testified to as much:  "He told me that Spanish friend and Silky had got into some problems with the law, he, he got arrested for a murder. . . .  [Saunders] said that they caught a murder and that . . . .  Silky was caring the flames."  (Tr. at 2349.)  Therefore, Petitioner's claim is without merit.

general, "courts have been skeptical of accepting a defendant's self-serving, post-conviction statements that he would have pleaded guilty if properly advised of the consequences by his attorney." *Gluzman v. United States*, 124 F. Supp. 2d 171, 177 (S.D.N.Y. 2000).

In *Purdy v. U.S.*, the Second Circuit noted two benchmarks "for the representation of a client who is deciding whether to accept a plea offer."  208 F.3d 41, 44 (2d Cir. 2000).  First, defense counsel must advise the client.  "As part of this advice, counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed."  *Id.* at 45 (citations omitted); *see also Pham v. United States,* 317 F.3d 178, 182 (2d Cir. 2003) ("Defense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government.").  Second, "a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer."  *Purdy*, 208 F.3d at 45.

To prove prejudice, Petitioner must "demonstrate a reasonable probability that but for Counsel's errors in considering or explaining a plea offer, he would have accepted the prosecution's offer."  *Aeid*, 296 F.3d at 63 (quotations omitted); see also *Purdy*, 208 F.3d at 49.  And "[i]n making this prediction, courts have been skeptical of accepting a defendant's self-serving, post-conviction statements that he would have pleaded guilty if properly advised of the consequences by his attorney."  *Gluzman*, 124 F. Supp. 2d at 177.  Thus, courts require "some objective evidence other than defendant's assertions to establish prejudice."  *Pham*, 317 F.3d at 182.  While a "significant sentencing disparity in combination with defendant's statement of his intention is sufficient to support a prejudice finding," *id.*, "such a disparity in outcomes does not

mandate a finding of prejudice."  *See Page v. Martuscello*, No. 10 CIV. 9699 JSR AJP, 2011 WL
3678820, at *27 (S.D.N.Y. Aug. 23, 2011).

Even if, as Petitioner contends, counsel provided incorrect legal advice as to hearsay, the
error was not prejudicial.  Petitioner contends that his initial willingness to accept the plea offer
after discussing it with counsel is evidence that he would have made a different decision but for
counsel's advice.  But Petitioner's evidence proves just the opposite.  In the first instance, a
willingness to accept the plea after discussing it with counsel indicates that counsel adequately
described the plea to Petitioner and that, if anything, counsel influenced Petitioner to take the
plea.  The fact that Petitioner later reversed his decision thus may only be evidence that the
influence of factors other than counsel's explanation of the case changed his mind.  In short,
Petitioner cannot show prejudice.

Even on the facts as alleged by Petitioner, counsel's performance also did not fall below
an acceptable standard.  Counsel's conduct was not unreasonable as he explained the plea
agreement to his client, and his statements constituted advice about sufficiency of the evidence,
not incorrect legal advice.  According to the Petitioner, Winston Lee explained the terms of the
plea to Petitioner in detail, including the potential sentencing ramifications and the mandatory
life sentence if Petitioner lost at trial.  (Aff. at 1-2.)  Counsel also outlined the "strengths and
weaknesses" of the case against Petitioner as required by *Purdy*.  208 F.3d at 45; (Aff. at 1-3.)
And, according to Petitioner, he believed a case based on witness testimony would be weak.
(Aff. at 2-3.)  Those statements constitute advice about the sufficiency of the evidence.  For
example, Petitioner's affidavit claims counsel said: "I should not worry about that type of
testimony because any testimony given by the cooperators … were only hearsay statements," and
"without separate physical evidence to confirm the cooperator's testimony the government

26

would not be able to establish a conviction." (Aff. at 2.)   This statement implies Petitioner knew the cooperators would testify and counsel merely suggested the cooperators would not convince the jury to convict.  If counsel had told Petitioner the cooperators' testimony constituted hearsay, Petitioner would have come away with the impression that the cooperators would not be allowed to testify as to their hearsay statements at all.[10]   Counsel's statements, therefore, were not made out of ignorance of the law, but were an assessment of the evidence and his opinion on the strength of the case. [11]  Further, counsel "categorically denies that he ever gave any of the erroneous advice or 'assurances' that Petitioner describes in Claim Six."  (Atty Decl. at 5.)

### 4. Petitioner's Ineffective Assistance Claim Regarding the Dismissed Robbery Charges Fails

In his First Amended Motion, Petitioner claims that counsel "provided him with ineffective assistance of counsel by failing to adequately investigate the prosecution's pre-trial dismissal of the counts relating to the robbery of 1930 Edenwald Avenue."  (First Am. Mot. at 1.)  This claim is procedurally barred as its factual predicate was raised, and decided, on appeal. *See Lee*, 660 F. App'x at 15.

---

[10] Petitioner further contends that counsel's position on appeal is objective evidence of counsel's advice regarding hearsay statements prior to trial.  (Mot. at 28.)  However, Petitioner cannot successfully argue that counsel's zealous advocacy on appeal is objective evidence of advice prior to trial. *Cf. McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 444 (1988) ("In searching for the strongest arguments available, the attorney must be zealous and must resolve all doubts and ambiguous legal questions in favor of his or her client.").

[11] *Lafler*, 566 U.S. at 160, cited as favorable precedent by Petitioner, is not on point here. The attorney in *Lafler* affirmatively convinced his client "that the prosecution would be unable to establish his intent to murder [the victim] because she had been shot below the waist." *Id.* at 161.  In that case, the court presumed ineffective assistance of counsel because in *Lafler* the attorney gave erroneous legal advice.  Here, however, Winston Lee, even assuming the facts as alleged by Petitioner, did not affirmatively convince Petitioner to decline the plea bargain.  To the contrary, Winston Lee's conversations with Petitioner apparently convinced Petitioner to accept the plea.

The Second Circuit has barred "ineffective assistance claims in a Section 2255 proceeding when the factual predicates of those claims, while not explicitly raised on direct appeal, were nonetheless impliedly rejected by the appellate court mandate." *Mui v. United States*, 614 F.3d 50, 53-54 (2d Cir. 2010); *see also United States v. Pitcher,* 559 F.3d 120, 124 (2d Cir. 2009) (rejecting petitioner's Section 2255 ineffective assistance claims because they were "premised on the same facts and rest on the same legal ground" as the argument made on direct appeal). Thus, "a Section 2255 petitioner may not relitigate questions which were raised and considered on direct appeal, including questions as to the adequacy of counsel." *Mui v*, 614 F.3d at 55 (citations and quotations omitted.)

In Defendant-Appellant's Third Supplemental Pro-Se Brief, Petitioner argued that the district court abused its discretion by not conducting an *in camera* inspection of government files after the Government dismissed charges related to a robbery at 1930 Edenwald Avenue. (Def.-Appellant's Third Suppl. Br. at 1.) The basis for Petitioner's claim was that the Government "knowingly relied on false evidence, and then suppressed that information in order to conceal its misconduct, and safeguard the credibility of its witness." (*Id*. at 3.) In his appellate brief, Petitioner argued that the Government dismissed the robbery charge to prevent him from receiving certain discovery. (*Id*.) Petitioner makes essentially the same claims in the instant Motion: "The Petitioner submits that had counsel adequately investigated this matter he would have discovered that the prosecution strategically dismissed the aforementioned robbery against everyone charged … in violation of *Brady* and *Giglio*." (First Am. Mot. at 1.) Yet, the Second Circuit dismissed this very issue in its summary order. *Lee*, 660 F. App'x at 14-15 ("The government represented that there was no such exculpatory material, since the dismissed charge was based on circumstantial evidence and not on false testimony by any of its witnesses.

28

Nothing in the record casts doubt on that representation, or indicates that the government's files contained additional undisclosed exculpatory or impeachment material."). Thus, Lee may not now relitigate the question regarding the dismissal of robbery charges that was "raised and considered on direct appeal." *Mui,* 614 F.3d at 55.

Even if Petitioner's 2255 Motion is not procedurally barred, the ineffective assistance of counsel claim fails to meet the high bar of *Strickland*. Here, trial counsel made a "deliberate tactical decision" to forego a "line of questioning that could open the door to damaging testimony concerning the already dismissed charges." (Atty Decl. at 6.) Much as a "decision not to call a particular witness usually falls under the realm of trial strategy," *Eze v. Senkowski*, 321 F.3d 110, 129 (2d Cir. 2003), so too the decision not to pursue a potentially damaging line of questioning is a reasonable strategic decision "that advances the client's interests." *Id.*

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Motion should be denied without an evidentiary hearing. *See Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).

Dated:  New York, New York
        August 3, 2018

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
for the Southern District of New York

By:  _____/s/_____
     Ryan B. Finkel
     Assistant United States Attorney
     (212) 637-6612

## **AFFIRMATION OF SERVICE**

I, Ryan B. Finkel, affirm under penalty of perjury as follows:

1.  I am an Assistant United States Attorney in the Southern District of New York.

2.  On August 3, 2018, I caused a copy of the foregoing to be served on the defendant by certified mail at the following address:

DELROY LEE; REGISTER NO 59893-054
USP LEE
U.S. PENITENTIARY
P.O. BOX 305
JONESVILLE, VA  24263

Dated: August 3, 2018
      New York, New York


_____/s/_____
Ryan B. Finkel
Assistant United States Attorney
(212) 637-6612

30