UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DELROY LEE,

              Petitioner,

-against-

UNITED STATES OF AMERICA,

              Respondent.

07-CR-00003 (LAP)
18-CV-1856 (LAP)

OPINION & ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Petitioner Delroy Lee's ("Mr. Lee" or "Petitioner") pro se motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence.[1] The Government opposes the motion.[2] For the reasons set forth below, Petitioner's § 2255 motion is granted in part and denied in part.

---

[1] (See Mot. to Vacate under 28 U.S.C. § 2255, dated Feb. 21, 2018 ("Mot. Vacate") [dkt. no. 713]; Mem. of Law in Support of Mot. to Vacate Pursuant to 28 U.S.C. § 2255 ("Pet. Mot."), dated Feb. 21, 2018 [dkt. no. 715]; Mot. to Amend Pet.'s Original § 2255 Submission Pursuant to Fed. R. Civ. P. 15(a) ("First Am. Mot."), dated Mar. 29, 2018 [dkt. no. 731]; Amended Argument Under Fed. R. Civ. P. 15(a) ("Second Am. Mot."), dated June 4, 2018 [dkt. no. 745]; Reply to Gov't Opp. ("Pet. Reply"), dated Oct. 31, 2018 [dkt. no. 775]; Supp. Mot. in Light of US v. Taylor ("Pet. Supp. Mot."), dated July 25, 2022 [dkt. no. 943]; Pet. Reply in Opp. to Gov't Response ("Pet. Supp. Reply"), dated Dec. 27, 2022 [dkt. no. 963]. Unless otherwise stated, all citations refer to 07-cr-00003.)

[2] (See Mem. of Law of the United States of America in Opp. to Pet. Mot. to Vacate, Set Aside, or Correct His Sentence ("Gov't Opp."), dated Aug. 3, 2018 [dkt. no. 755]; Letter addressed to Judge Loretta A. Preska from AUSA Alexandra S. Messiter ("Gov't Supp. Opp."), dated Oct. 28, 2022 [dkt. no. 959].)

I.   **Background**

Petitioner was a member of a racketeering "enterprise," as defined by 18 U.S.C. § 1961(4), known as the DeKalb Avenue Crew, which operated principally around DeKalb Avenue in the Bronx during the 1990s and 2000s. See United States v. Lee, 834 F.3d 145, 149 (2d Cir. 2016). In furtherance of the enterprise, Petitioner and his co-defendants "engaged in extensive drug dealing, violence, robberies of drug dealers, and murders." Id.

a.   **The Indictment**

On February 20, 2008, a grand jury charged Petitioner and his co-defendants in a thirty-five-count Superseding Indictment. (See Superseding Indictment (the "Indictment"), dated Feb. 20, 2008 [dkt. no. 93].)[3] The Indictment charged the defendants with engaging in, "among other things, armed robbery, narcotics trafficking, and murder." (See Redacted Indictment at 1.) Petitioner was charged in seventeen counts. (See generally id.)

Count One of the Redacted Indictment charged Petitioner with racketeering through the commission of multiple acts, including conspiracy to commit robbery, robbery, kidnapping,

---

[3] During jury deliberations, the Government provided to the jury a redacted and re-numbered indictment that removed counts for which none of the trial defendants was charged to avoid undue speculation by the jury. (See the "Redacted Indictment," dated Aug. 22, 2011 [dkt. no. 513]. See also Gov't Opp. at 2, n.1.) Petitioner and the Government cite the Redacted Indictment in their papers. To avoid confusion, all references to counts charged refer to the Redacted Indictment.

felony murder, and narcotics conspiracy, in violation of
18 U.S.C. § 1961 and 1962(c). (Id. at 3-14.) Count Two charged
Petitioner with racketeering conspiracy, in violation of
18 U.S.C. § 1962(d). (Id. at 14-15.)

Counts Three and Five charged Petitioner with the murders
of Patrick Taylor, (id. at 15-17), and Bunny Campbell (id. at
18-19), respectively, in aid of racketeering activity, in
violation of 18 U.S.C. § 1959(a)(1) and 2. Count Six charged
Petitioner with participating in a narcotics conspiracy, in
violation of 21 U.S.C. § 846. (Id. at 19-20.) Count Seven
charged Petitioner with the murder of Patrick Taylor in
connection with a drug crime, in violation of 21 U.S.C.
§ 848(e)(1)(A) and 18 U.S.C. § 2. (Id. at 20-21.)

Count Eight charged Petitioner with various robbery
offenses, including robbery conspiracy and robbery, in violation
of 18 U.S.C. § 1951 (the "Hobbs Act"). (Id. at 21.) Counts
Twelve and Fourteen charged Petitioner with robbery and
attempted robbery, respectively, both in violation of the Hobbs
Act. (Id. at 24-26.)

Count Sixteen charged Petitioner with the use, carrying,
and possession of firearms during and in relation to the
narcotics conspiracy charged in Count Six, in violation of
18 U.S.C. §§ 924(c)(1)(A)(i) and 2. (Id. at 27.) Count Seventeen
charged Petitioner with the murder of Patrick Taylor through the

use of a firearm in connection with the narcotics conspiracy charged in Count Six, in violation of 18 U.S.C. §§ 924(j)(1) and 2. (Id. at 28.) Count Twenty-Two charged Petitioner with the use, carrying, possession, and brandishing of a firearm during and in relation to the robbery charged in Count Twelve, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(C)(i) and 2. (Id. at 31.) Count Twenty-Four charged Petitioner with the murder of Bunny Campbell through the use of a firearm in connection with the attempted robbery charged in Count Fourteen, in violation of 18 U.S.C. §§ 924(j)(1) and 2. (Id. at 32.) Count Twenty-Five charged Petitioner with the use, carrying, possession, and discharge of a firearm during and in relation to the attempted robbery charged in Count Fourteen, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(C)(i) and 2. (Id. at 32-33.) Finally, Count Twenty-Seven charged Petitioner with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Id. at 33-34.)

**b.**   **Trial and Sentencing**

Following a six-week trial before Judge Barbara S. Jones, a jury found Petitioner guilty of all counts in which he was named. (See dkt. no. 412; Gov't Opp. at 8.) On March 25, 2011, Petitioner was sentenced to a total of life imprisonment plus thirty years. (Gov't Supp. Opp. at 2 (citing Sentencing Tr.

("Sent. Tr."), dated Mar. 25, 2011 [dkt. no. 496 at 9].)[4] This sentence included: 1) concurrent terms of life imprisonment on each of Counts One, Two, Three, Five, Seven, Seventeen, and Twenty-Four; 2) concurrent twenty-year terms of imprisonment on each of Counts Six, Eight, Twelve, and Fourteen; and 3) consecutive terms of five years' imprisonment on Count Sixteen and twenty-five years' imprisonment on Count Twenty-Two. (Gov't Supp. Opp. at 2.) The Court did not impose a sentence for Count Twenty-Five based on the "corresponding 924(j) conviction for the same underlying conduct." (Id. (quoting Sent. Tr. at 3).)

c.   **Post-Trial Proceedings**

Petitioner appealed his conviction on June 21, 2011. (See docket entry dated June 22, 2011 [dkt. no. 503]; see also Gov't Opp. at 9.) On January 16, 2013, Petitioner's case was reassigned to this Court. (See dkt. no. 589.)

On July 17, 2012, Petitioner filed an appeal brief, followed by three pro se supplemental briefs. Petitioner challenged "the sufficiency of the evidence to prove": 1) "the interstate commerce element of [the] various charged substantive Hobbs Act robberies," Lee, 834 F.3d at 150; 2) his involvement

---

[4] (See also Judgment in a Criminal Case ("Judgment"), dated June 17, 2011 [dkt. no. 501].)

in the murders of Patrick Taylor and Bunny Campbell, see United States v. Lee, 660 F. App'x 8, 15-16 (2d Cir. 2016) (summary order); 3) that the murder of Bunny Campbell was for the "purpose of 'maintaining or increasing [his] position' in the Dekalb Avenue Crew," id. at 16; and 4) his firearm convictions, see id. Petitioner also claimed that the District Court: 1) "erred in denying his motion to suppress a witness's photographic identification of him without an evidentiary hearing," id. at 12; 2) failed to suppress evidence seized without a warrant at the scene of Bunny Campbell's murder, see id. at 13-14; 3) failed to inspect the Government's files relating to charges the Government dismissed from the indictment for any Brady or Giglio materials, see id. at 14-15; Gov't Opp. at 9-10; 4) failed to investigate an individual juror's mental state, see Lee, 660 F. App'x at 18; 5) provided insufficient jury instructions, see id. at 19; and 6) lacked jurisdiction on Counts Seventeen and Twenty-Four, see id. at 16-17; see also Gov't Opp. at 9. The Court of Appeals denied each of Petitioner's claims, affirming Petitioner's conviction and sentence. Lee, 660 F. App'x at 22; Lee, 834 F.3d at 149. On April 17, 2017, the Supreme Court denied Lee's petition for a writ of certiorari. Lee v. United States, 137 S. Ct. 1599 (Mem.) (2017).

### d.   **The Instant Motion**

On February 28, 2018, Petitioner filed the instant pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (See Mot. Vacate.) Petitioner's initial motion raised claims that: 1) his 18 U.S.C. § 924(c) convictions violate the Double Jeopardy Clause because they are lesser included offenses of the § 924(j) convictions, (see Pet. Mot. at 3); 2) that Hobbs Act robbery is not a "crime of violence" following the Supreme Court's decision in Johnson v. United States, 576 U.S. 591 (2015), that the residual clause of the definition of a "violent felony" under the Armed Career Criminal Act is unconstitutionally vague, (see Pet. Mot. at 26); and 3) that Counsel was ineffective for a number of reasons, (see id. at 7, 22, 27; see also Gov't Opp. at 11 (reordering Petitioner's claims).

On May 7, 2018, this Court ordered Petitioner's trial Counsel, Winston Lee ("Counsel"), to address Petitioner's allegations of ineffective assistance of counsel by filing an affidavit. (See order dated May 7, 2018 [dkt. no. 739].) In an affidavit filed on July 3, 2018, Counsel responded to each of Petitioner's ineffective assistance of counsel claims. (See Attorney's Declaration ("Att'y Decl."), dated July 3, 2018 [dkt. no. 748].)

7

Following the Supreme Court's decision in United States v. Taylor, 142 S. Ct. 2015, 2020-21 (2022), this Court ordered the parties to file supplemental briefing regarding the impact of the Supreme Court's decision on Petitioner's pending habeas motion. (See order dated July 14, 2022 [dkt. no. 942].) On August 2, 2022, Petitioner filed a pro se supplemental brief, arguing that the Supreme Court's holding in Taylor invalidates his convictions for Counts Twenty-Two and Twenty-Five under 18 U.S.C. § 924(c) and Count Twenty-Four under 18 U.S.C. § 924(j). (See Pet. Supp. Mot.) The Government filed its opposition on October 28, 2022. (See Gov't Supp. Opp.) Petitioner filed his reply on December 28, 2022. (See Pet. Supp. Reply.)

## II.  **Legal Standards**

### a.  **Motion to Vacate**

Under 28 U.S.C. § 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the grounds, inter alia, that the "sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is only available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a 'fundamental defect which inherently results in a

complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (citations omitted).

### 1. Procedural Bar to Relitigating Issues Already Decided on Direct Appeal

In general, a § 2255 motion may not be used to relitigate issues already decided on direct appeal. See Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Minicone, 994 F.2d 86, 89 (2d Cir. 1993). This is known as the mandate rule. Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010). The mandate rule "prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." Id.; see also United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001). In the specific context of § 2255 ineffective assistance of counsel litigation, the Court of Appeals has applied the mandate rule in this manner, including "when the factual predicates of those claims, while not explicitly raised on direct appeal, were nonetheless impliedly rejected by the appellate court mandate." Mui, 614 F.3d at 53; see, e.g., United States v. Pitcher, 559 F.3d 120, 124 (2d Cir. 2009).

### 2. Procedural Bar to Claims Not Raised on Direct Appeal

Failure to raise a claim on direct appeal results in procedural default. Bousley v. United States, 523 U.S. 614, 622

(1998). Even where "new substantive rules of federal criminal law" are announced after a defendant's conviction is finalized, procedural default rules govern review of the claim. Harrington v. United States, 689 F.3d 124, 128–29 (2d Cir. 2012). However, there are two exceptions to this procedural bar. A petitioner may overcome the bar by demonstrating "either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" DiSimone v. Phillips, 461 F.3d 181, 191 (2d Cir. 2006) (quoting Bousley, 523 U.S. at 622); see also Coleman v. Thompson, 501 U.S. 722, 750 (1991); Murray v. Carrier, 477 U.S. 478, 495 (1986). With respect to the first exception, a petitioner establishes cause when "'some objective factor external to the defense'" prevented him from raising it. McCleskey v. Zant, 499 U.S. 467, 493 (1991) (quoting Murray, 477 U.S. at 488). To show prejudice, the procedural default must also result in actual injury and cause a "substantial disadvantage, infecting the trial with error of constitutional dimensions." Murray, 477 U.S. at 494.

The standard for the second exception to the procedural bar, actual or factual innocence, is more open to interpretation. This exception is intended for "an extraordinary case, where a constitutional violation has probably resulted in the conviction of someone who is actually innocent." Murray, 477 U.S. at 496. To demonstrate actual innocence, a petitioner must show that "he is actually innocent of the crime for which he has

been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)). Actual innocence in this context is "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623 (citation omitted). Moreover, a petitioner must demonstrate that "it is more likely than not that no reasonable juror would have found [him] guilty beyond reasonable doubt" based upon "new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." House v. Bell, 547 U.S. 518, 537 (2006); see also Schlup, 513 U.S. at 327–28.

Special considerations regarding appellate review of ineffective assistance of counsel claims warrant an exception, however, such that a "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." Massaro v. United States, 538 U.S. 500, 509 (2003).

b.   **Concurrent Sentence Doctrine**

The concurrent sentence doctrine is available in the context of a § 2255 challenge. Kassir v. United States, 3 F.4th 556, 561 (2d Cir. 2021). The concurrent sentence doctrine "'allows courts, in their discretion, to avoid reaching the merits of a claim altogether in the presence of identical

11

concurrent sentences' since 'a ruling in the defendant's favor
would not reduce the time he is required to serve or otherwise
prejudice him in any way.'" Id. (citations omitted).

In Kassir, while the Court of Appeals rejected the
Government's argument that § 2255 relief is never cognizable
when the petitioner is serving multiple life sentences, it held
that "absent a showing of prejudice with respect to custody, a
court proceeding under § 2255 retains discretion to decline to
consider such a challenge." Id. at 567. The Court, therefore,
using its discretion, refused to reach the merits of
petitioner's claim, as the petitioner would be serving two
unchallenged life sentences regardless and as such "[n]o matter
the success of his argument" the Court could not "shorten the
time he will remain in prison". Id. at 564, 567; see also United
States v. Rodriguez, No. 05-CR-960, 2022 WL 158685, at *2
(S.D.N.Y. Jan. 18, 2022) (applying the reasoning of Kassir when
declining to hear a § 2255 claim).

### c.  **Double Jeopardy**

The Double Jeopardy Clause of the Fifth Amendment provides
that no person shall be "subject for the same offense to be
twice put in jeopardy of life or limb." U.S. Const. Amend. V.
The Double Jeopardy Clause "protects against both multiple
punishments and successive prosecutions for the same offense."
United States v. Basciano, 599 F.3d 184, 196 (2d Cir. 2010)

12

(citing Schiro v. Farley, 510 U.S. 222, 229 (1994)). "When a defendant has violated two separate criminal statutes, the protection against double jeopardy is implicated . . . when one offense is a lesser included offense of the other." Aparicio v. Artuz, 269 F.3d 78, 96 (2d Cir. 2001). As the Supreme Court explained in Albernaz v. United States, "[it] is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause." 450 U.S. 333, 344 n.3 (1981) (citations omitted).

Blockburger v. United States established the "same-elements" test to determine whether two offenses are in fact the same for double jeopardy purposes. United States v. Weingarten, 713 F.3d 704, 708 (2d Cir. 2013) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)). This test "asks whether each offense contains an element not contained in the other, and provides that, if not, they are the same offen[s]e and double jeopardy bars additional punishment and successive prosecution." Weingarten, 713 F.3d at 708 (cleaned up).  Thus, "if each section requires proof of at least one fact that the other does not, there are two offenses." United States v. Khalil, 214 F.3d 111, 118 (2d Cir. 2000). Where the two offenses are distinct under Blockburger, "it is presumed that the legislature intended to authorize prosecution and punishment under both," and "the imposition of multiple punishments does not violate the Double

Jeopardy Clause." Weingarten, 713 F.3d at 708 (citations omitted); see also Albernaz, 450 U.S. at 339–42.

As the Government notes in its opposition to Petitioner's motion, the Court of Appeals has not directly addressed the issue of whether the Government may bring separate charges under §§ 924(c) and 924(j) alleging distinct criminal acts in connection with the same predicate offense. (See Gov't Opp. at 14.) The Supreme Court recently ruled that §§ 924(c) and 924(j) are separate offenses for which sentences may run concurrently or consecutively. Lora v. United States, 599 U.S. 453, 455 (2023); but see id. at 461 (expressing "no position" on the Government's view that 924(j) is the same offense as 924(c) for the purposes of the Double Jeopardy Clause).

**d.   Section 924(c)**

Section 924(c) makes it a crime to possess a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). The statute provides two definitions for what constitutes a "crime of violence." The first definition is known as the "force clause" (or "elements clause"), which defines a crime of violence as a felony which "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Id. at § 924(c)(3)(A). See also United States v. Hill, 890 F.3d 51, 54 (2d Cir. 2018) (referring to

14

§ 924(c)(3)(A) as the "force clause"). The second definition known as the "risk of force clause" (or the "residual clause"), defines a crime of violence as a felony that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). See also Hill, 890 F.3d at 54 (referring to § 924(c)(3)(B) as the "risk-of-force clause").

The crime of violence residual clause, however, is no longer enforceable. In United States v. Davis, 139 S. Ct. 2319 (2019), the Supreme Court found that § 924(c)'s "risk of force" clause was unconstitutionally vague and invalidated the provision. Id. at 2336. As a result, a predicate "crime of violence" under § 924(c) is only valid if it falls within the scope of the force clause. See Boykin v. United States, No. 16-CV-4185, 2020 WL 774293, at *5 (S.D.N.Y. Feb. 18, 2020) ("924(c)(3)(B) has been effectively stricken from the statute."). As relevant here, in Taylor, the Supreme Court held that attempted Hobbs Act robbery is not a crime of violence for purposes of § 924(c). Taylor, 142 S. Ct. at 2021.

While attempted Hobbs Act robbery is no longer a crime of violence and as such is not a valid predicate for a § 924(c) conviction, "[i]t is well established that murder remains a crime of violence under § 924(c) post-Davis." United States v.

15

Batista, No. 00-CR-1181, 2022 WL 5187458, at *2 (S.D.N.Y. Oct. 5, 2022) (citing Stone v. United States, 37 F.4th 825, 828 (2d Cir. 2022), cert. denied, No. 22-5637, 143 S. Ct. 396 (Mem.) (2022) ("This Court, sitting en banc in United States v. Scott, rejected this very argument.")).

    **e.**   **Ineffective Assistance of Counsel**

The Sixth Amendment guarantees a criminal defendant the right to effective assistance from counsel. See Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003). To establish a claim for ineffective assistance of counsel, a petitioner must meet the heavy burden of proving that the conviction "resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the two-prong test set forth in Strickland, a petitioner must show both that "counsel's representation fell below an objective standard of reasonableness" and that he suffered prejudice as a result. Id. at 688, 693. Assessment of prejudice lies in whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

In assessing whether counsel's performance fell below an objective standard of reasonableness, the court must bear in mind the "strong" presumption that counsel has "rendered

adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

Id. at 690-91.

To satisfy the second prong of the Strickland test, there must be a reasonable probability, i.e., "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." See id. at 694. The ultimate question in assessing prejudice is whether, "absent the errors, the factfinder would have had a reasonable doubt" as to the defendant's guilt. Id. at 695. The performance and prejudice prongs need not be addressed in any particular order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." See id. at 697.

In the context of trial strategy, courts must "accord proper weight to the role of defense counsel in fashioning an overall trial strategy." United States v. Plitman, 194 F.3d 59, 64 (2d Cir. 1999). In the context of plea offers, "defense

counsel has the duty to communicate formal offers from the
prosecution to accept a plea on terms and conditions that may be
favorable to the accused." <u>Missouri v. Frye</u>, 566 U.S. 134, 145
(2012). To show <u>Strickland</u> prejudice with respect to counsel's
handling of a proposed plea, a defendant "must demonstrate a
reasonable probability that but for counsel's deficient
performance, he would have pled guilty instead of going to
trial." <u>Raysor v. United States</u>, 647 F.3d 491, 495 (2d Cir.
2011) (citations omitted). While a defendant can offer his own
statement in support of that showing, "in order for the
statement to be sufficiently credible to justify a full hearing,
it must be accompanied by some 'objective evidence,' such as a
significant sentencing disparity, that supports an inference
that the petitioner would have accepted the proposed plea offer
if properly advised." <u>Id.</u> (quoting <u>Puglisi v. United States</u>, 586
F.3d 209, 215-16 (2d Cir. 2009)).

## III. <u>Discussion</u>

### a.   <u>Concurrent Sentence Doctrine</u>

The Government argues that Court should decline to consider
Petitioner's challenges to Counts Twenty-Four and Twenty-Five
under the concurrent sentence doctrine because Petitioner is not
claiming the right to be released given his life sentences. (<u>See</u>
Gov't Supp. Opp. at 3.) <u>Kassir</u> established that, absent a
showing of prejudice, this Court has the discretion to decline

18

to consider a § 2255 challenge when, as here, the petitioner will remain in custody regardless of the outcome of the motion. Kassir, 3 F.4th at 567. However, the Court declines to exercise that discretion here and will continue to the merits of Petitioner's claims.

### b.    Section 924(c) Convictions Predicated on Attempted Hobbs Act Robbery and Completed Hobbs Act Robbery

Petitioner claims that his convictions under §§ 924(c) and (j) are unconstitutional following the Supreme Court's decisions in Taylor and Davis because attempted and completed Hobbs Act robbery are no longer constitutionally valid predicates. Petitioner argues that: (1) Count Twenty-Two, charging violations of § 924(c) in connection with the completed Hobbs Act robbery charged in Count Twelve; and (2) Counts Twenty-Four and Twenty-Five, charging violations of §§ 924(j) and (c), respectively, in connection with the attempted Hobbs Act robbery charged in Count Fourteen, must be vacated in light of Taylor.

### 1.    Completed Hobbs Act Robbery as Predicate Felony

Petitioner's assertion that Count Twenty-Two is an invalid predicate for his § 924(c) conviction is incorrect. Petitioner argues that the logic of Taylor "applies in equal force" to aiding and abetting a completed Hobbs Act robbery. (See Pet. Supp. Mot. at 3.) Petitioner's challenge fails because it is legally inaccurate. As the Government argues, Petitioner's

§ 924(c) conviction predicated on aiding-and-abetting a completed Hobbs Act robbery remains valid after Taylor. (See Gov't Supp. Opp. at 7.) The Court of Appeals' recent decision regarding a nearly identical claim brought by one of Petitioner's co-defendants is determinative here. In United States v. Waite, the Court of Appeals following Taylor held that "aiding and abetting a Hobbs Act robbery — like committing a Hobbs Act robbery itself — is a proper predicate under § 924(c)." No. 18-2651, 2023 WL 3730447, at *1 (2d Cir. May 31, 2023) (summary order).

### 2. Attempted Hobbs Act Robbery as Predicate Felony

Petitioner further claims that his §§ 924(c) and (j) convictions predicated on attempted Hobbs Act robbery are invalid under Taylor. (See Pet. Supp. Mot. at 1-2.) The Government does not dispute that attempted Hobbs Act robbery is no longer a valid predicate for a § 924(c) conviction. (See Gov't Supp. Opp. at 8, n.3) (noting that the Court "should decline to reach the claim under the concurrent sentence doctrine, as discussed. However, if the Court reaches the claim as to Counts Twenty-Four and Twenty-Five, the Government waives any procedural default defense as to those counts.") (citing Wood v. Milyard, 566 U.S. 463, 466 (2012).) Accordingly, the Court vacates Petitioner's convictions on Counts Twenty-Four and Twenty-Five and will resentence Petitioner in light of Taylor.

### c.   924(c) Convictions as Lesser-Included Offenses of 924(j) Convictions

Petitioner argues that his § 924(c) convictions for Counts Sixteen and Twenty-Five must be vacated because they are lesser included offenses of his § 924(j) convictions for Counts Seventeen and Twenty-Four, respectively. (Pet. Mot. at 3.) The Government argues that Petitioner's double jeopardy argument fails, not only because it is procedurally barred but also because Petitioner's argument fails on the merits. (See Gov't Opp. at 15–16.)

The Court first addresses Petitioner's arguments regarding Counts Sixteen and Seventeen.  At the outset, the Court notes that Petitioner is procedurally barred from bringing this claim as he did not raise this issue on direct appeal. See Underwood v. United States, 166 F.3d 84, 87 (2d Cir. 1999); Lee, 660 F. App'x at 15. Yet Petitioner's argument also fails on the merits.

Petitioner claims that Count Sixteen is invalid because it is a lesser-included offense of Count Seventeen. Under Blockburger, Count Sixteen is not a lesser-included offense of Count Seventeen because both offenses "require[] proof of a fact which the other does not." Blockburger, 284 U.S. at 304. While a § 924(c) offense can be a lesser included offense of a § 924(j) offense, see United States v. Rodriguez, No. 19-CR-779, 2020 WL 5819503, at *7 (S.D.N.Y. Sept. 30, 2020), that does not apply

21

here, because Petitioner's underlying offenses were not the same in fact.

Count Sixteen charged Petitioner with the use, carrying, possession, and brandishing of a firearm in violation of § 924(c) between 1997 and 2007 in relation to the narcotics conspiracy charged in Count Six in violation of 21 U.S.C. § 846. (Gov't Opp. at 16). By contrast, Count Seventeen charged Petitioner with the death of Patrick Taylor on August 23, 2000, in violation of § 924(j)(1) and (2) in connection with Count Six. (See id.) These counts relate to different firearms activity. Count Seventeen involves discharge of a gun at one moment in time to commit a murder, while Count Sixteen involves the carrying, use, and discharge of multiple guns over a ten-year period during a narcotics conspiracy. While Count Seventeen requires proof of murder, the broader Count Sixteen encompasses the "facilitation of a long-running drug conspiracy." See United States v. McCoy, No. 02-CR-1372, 2022 WL 2981445, at *5 (S.D.N.Y. July 27, 2022); see also Gov't Opp. at 16–17. Thus, Petitioner's claim that Count Sixteen is a lesser included offense of Count Seventeen fails on the merits.

Petitioner further contends that his conviction for Counts Twenty-Four and Twenty-Five violate the Double Jeopardy Clause. As stated above, the Court vacates Petitioner's conviction on

Counts Twenty-Four and Twenty-Five, which renders his double jeopardy claim moot.

### d.   <u>Ineffective Assistance of Counsel</u>

Petitioner argues that Counsel was deficient due to his failure to: 1) investigate an alternative suspect, (Pet. Mot. at 1); 2) object to the Government's comments during summation and introduce a witness's non-prosecution agreement, (<u>id.</u>); 3) advise Petitioner accurately regarding the plea agreement, (<u>id.</u>); 4) investigate the pre-trial dismissal of robbery charges (First Am. Mot. at 1); 5) object to the trial court's jury instruction that a Hobbs Act robbery is a crime of violence (Second Am. Mot. at 1); and 6) object to alleged double jeopardy issues raised during sentencing on Counts Sixteen and Twenty-Five, (Pet. Mot. at 1). The Court addresses each argument in turn.

### 1.   **Insufficient Investigation and Use of Material**

Petitioner asserts that "counsel was ineffective for failing to investigate, pursue, and/or present an alternate suspect defense for the murder and robbery of Bunny Campbell." (Pet. Mot. at 7). In so alleging, Petitioner claims that Counsel failed to investigate an anonymous letter regarding an alternative suspect addressed to the detective investigating

Campbell's murder[5] and failed to present a defense concerning inconsistencies in the Government's case.[6]

Petitioner's claim that Counsel "failed to investigate critical evidence" regarding an alternative suspect lacks merit. (Pet. Mot. at 8.) While the duty to investigate is an "essential" component of the "adversarial testing process," it does not "compel" counsel to conduct a comprehensive investigation of "every lead or possible defense." Greiner v. Wells, 417 F.3d 305, 320-21 (2d Cir. 2005). "[R]easonably diligent counsel may draw a line where they have good reason to think further investigation would be a waste." Rompilla v. Beard, 545 U.S. 374, 383 (2005).

Contrary to Petitioner's argument, Counsel explained that he made a "strategic decision" in presenting the defense to the Bunny Campbell murder charges. (Att'y Decl. at ¶ 7(b).) Counsel declared under oath that he "fully discussed and considered all of the evidence and all available defenses" with Petitioner

---

[5] The letter regarding the possible suspect described a man who may rob individuals in parks. (See Attach. 1 to Pet. Mot. ("He might get involved in act of gay sex and then put [sic.] out gun or knife.").)

[6] Specifically, Petitioner takes issue with the fact that while the Government claimed Petitioner and his co-conspirators were in the apartment in question at the time of Campbell's murder, Government witness Jonathan Headley testified that he saw Petitioner leave the building before two unidentified men arrived. (See Pet. Mot. at 9, 16.)

prior to trial and Petitioner agreed with the defense that
Counsel later presented at trial. (Id.) Thus, while Counsel did
not pursue, investigate, or present as evidence information
about a possible alternative suspect, his strategic
investigation indicates that his conduct was objectively
reasonable.

Additionally, Counsel's investigation and defense to the
Bunny Campbell murder and robbery charges was not prejudicial
because the evidence of "petitioner's guilt presented at trial"
cuts against a finding of prejudice. See Loliscio v. Goord, 263
F.3d 178, 196 (2d Cir. 2001). For example, Mark Gabriel, a
cooperator, testified at trial that Petitioner "said he
committed a robbery in his girlfriend's apartment, where someone
had been murdered." (Gov't Opp. at 21, n.7.)[7] Another cooperator
testified that Petitioner's brother told him that Petitioner had
committed a robbery involving Bunny Campbell and Petitioner

---

[7] Petitioner alleges that "the prosecution intentionally
misstated Mark Gabriel's testimony." (Pet. Mot. at 25.) This
claim is undermined by the record. During summation the
Government said: "And remember what Saunders told him. Specs and
Silky had just caught a body. He was referring to the Bunny
Campbell murder. He said Silky was carrying the flame." (Trial
Tr. at 4630.) Mark Gabriel testified that "[h]e told me that
Spanish friend and Silky had got into some problems with the
law, he, he got arrested for a murder. . . . [Saunders] said
that they caught a murder and that . . . . Silky was caring
[sic.] the flames." (Trial Tr. at 2349.) The Government's
statement is similar enough to Gabriel's testimony that
Petitioner's claim fails.

later told the cooperator, "I thought they had me for the murder [of Bunny]." (See id. (quoting Trial Tr. at 3693-94.)) Accordingly, Petitioner's claim that Counsel provided ineffective assistance of counsel when he failed to investigate another lead for the murder and robbery of Bunny Campbell is denied.

### 2.   Jessica Parchment's Non-Prosecution Agreement

Petitioner claims that Counsel's assistance was deficient because he failed to: 1) "introduce Jessica Parchment's non-prosecution agreement," 2) "object to the improper vouching of Jessica Parchment," and 3) "object to the prosecutor's improper remarks during summation." (Pet. Mot. at 22; see also Pet. Reply at 10.) Petitioner claims that "the prosecution intentionally mislead the jury into believing that Jessica Parchment did not benefit from her testimony, and that she was not a cooperator." (Pet. Mot. at 22.)

Petitioner's claim of ineffective assistance lacks merit. The Government and Ms. Parchment signed a non-prosecution agreement related to Ms. Parchment's immigration status. (See Gov't Opp. at 22.) Because a non-prosecution agreement differs from a cooperation agreement, the Government's statement that

Ms. Parchment was "not a cooperator" did not misrepresent the facts or her status. (See Trial Tr. at 4722-23.)[8]

Petitioner also faults Counsel for failing to object to the Government's statement that Ms. Parchment received "no benefit from giving this information." (See Pet. Mot. at 23 (quoting Trial Tr. at 4722-23).) Petitioner asserts that Ms. Parchment had an incentive to lie. (See Pet. Mot. at 24.) However, Petitioner is incorrect. Ms. Parchment testified under oath, subject to penalties of perjury. In addition, Ms. Parchment's non-prosecution agreement could have been invalidated if she lied, providing Ms. Parchment with every incentive to tell the truth. (See Gov't Opp. at 23.)

Finally, Petitioner alleges that the prosecution engaged in "impermissible vouching" by stating that Ms. Parchment "came in here and told the truth." (See Pet. Mot. at 25; see also Gov't Opp. at 23-24.) Petitioner's argument fails because it is procedurally barred, Lee, 660 F. App'x at 15, and does not meet the standard set out in United States v. Carr: an "improper remark by a prosecutor will justify a reversal . . . only if it causes the defendant substantial prejudice," 424 F.3d 213, 227 (2d Cir. 2005) (quotation marks and citations omitted).

---

[8] (See also Att'y Decl. at ¶ 7(b) (Counsel explaining that he "did not object to the prosecutor's remark that Jessica Parchment was not a 'cooperator'" because it was an accurate statement).)

Considering the evidence presented against Petitioner at trial, such conduct would not "undermine confidence in the outcome." See Strickland, 466 U.S. at 694.  Accordingly, the Court denies Petitioner's claims regarding the prosecution's actions and Jessica Parchment's non-prosecution agreement.

### 3.   Erroneous Advice Regarding Plea Offer

Petitioner contends he received ineffective assistance of counsel from Counsel, in part, because Counsel made erroneous statements as to hearsay during plea negotiations that caused Petitioner to reject a favorable plea. (See Pet. Mot. at 27-28.) Counsel denies giving Petitioner any "erroneous advice or 'assurances.'" (See Att'y Decl. at ¶ 9(b).)

Petitioner's argument fails under Strickland: "a guilty plea cannot be attacked as based on inadequate legal advice unless Counsel was not a reasonably competent attorney and the advice was not within the range of competence demanded of attorneys in criminal cases." 466 U.S. at 687 (citations and internal quotation marks omitted). As described by Petitioner, Counsel's performance was objectively reasonable. Counsel explained the plea agreement to Petitioner in detail, including the potential sentencing ramifications and the mandatory life sentence if Petitioner lost at trial. (See Attach. 5 of Pet. Mot. ("Attach. 5") [dkt. no. 715] at ¶¶ 6-8, 15.) Based on Petitioner's affidavit, Counsel clearly assessed the evidence

and explained his belief to Petitioner that a case based on witness testimony would be weak. (See Attach. 5 at ¶¶ 9-14.) Contrary to Petitioner's contention that Counsel's advice was "legally incorrect," Petitioner's affidavit reveals that Counsel's statements were an accurate reflection of his opinion on the strength of the case. (See Pet. Mot. at 31; Attach. 5; see also Gov't Opp. at 27.) Thus, Counsel reasonably concluded that there was a chance that the cooperators' testimony alone would not convince the jury to convict.

Even if Counsel had provided incorrect legal advice, there was no prejudicial effect. (See Gov't Opp. at 26.) Petitioner claims that but for Counsel's advice regarding hearsay, he "would have accepted the government's offer." (Attach. 5 at ¶ 30.) This argument is implausible based on Petitioner's account of facts in his affidavit. Petitioner stated that he was initially willing to accept the plea offer after discussing it with Counsel, acted unilaterally when he refused to appear in court to accept the plea offer, and only later informed Counsel of his decision. (See id. at ¶¶ 16-19, 24-28.) Based on these uncontested facts, Petitioner cannot establish that but for Counsel's advice, Petition would not have changed his mind and rejected the plea offer at the last moment. Thus, Petitioner cannot show prejudice, and the Court denies this claim for ineffective assistance of Counsel.

**4.    Failure to Investigate Alleged <u>Brady</u> Violation Regarding Dismissed Robbery Charges**

Petitioner claims in his First Amended Motion that Counsel "provided him with ineffective assistance of counsel by failing to adequately investigate the prosecution's pre-trial dismissal of the counts relating to the robbery of 1930 Edenwald Avenue." (First Am. Mot. at 1.) The mandate rule bars Petitioner's ineffective assistance claim insofar as it relies on Counsel's decision not to raise a <u>Brady</u> violation in response to the Government's alleged suppression of Jonathan Headley's statements regarding the dismissed robbery charges. <u>See</u> <u>Mui</u>, 614 F.3d at 53 (describing rejection of ineffective assistance claims where the "factual predicates" are the same as on direct appeal).[9]

Because the Court of Appeals considered and ruled on the substance of these issues, Petitioner's framing them through the lens of ineffective assistance does not move the needle. "[A] habeas petitioner is barred from presenting an ineffective assistance [of] counsel claim on collateral review that is

---

[9] <u>See</u> <u>Lee</u>, 660 F. App'x at 14–15 (holding that "[t]he government represented that there was no such exculpatory material, since the dismissed charge was based on circumstantial evidence and not on false testimony by any of its witnesses. Nothing in the record casts doubt on that representation, or indicates that the government's files contained additional undisclosed exculpatory or impeachment material.").

simply a slightly altered rearticulation of a claim that was rejected on [] direct appeal." <u>Shapiro v. United States</u>, 15-CV-7891, 2018 WL 9801182, at *4 (S.D.N.Y. Aug. 7, 2018) (quotation marks and citation omitted), <u>aff'd</u>, 828 F. App'x 82 (2d Cir. 2020). In his habeas petition, Petitioner continues to attack the Court of Appeals' affirmance of this Court's decision not to review the government's files to identify any <u>Brady</u> or <u>Giglio</u> materials.[10] Thus, Petitioner's claim is denied because it is procedurally barred.

Even if Petitioner's ineffective assistance of counsel claim is not procedurally barred, there is no evidence that Petitioner suffered prejudice because of Counsel's actions. Counsel made a "deliberate tactical decision . . . [to] discontinue any line of questioning that could open the door to damaging testimony concerning the already dismissed charges." (<u>See</u> Att'y Decl. at ¶ 10(b).) Much as a "decision not to call a particular witness usually falls under the realm of trial strategy," so too the decision not to pursue potentially damaging testimony is a reasonable strategic decision "that advances the client's interests." <u>Eze</u>, 321 F.3d at 129.

---

[10] (<u>See, e.g.</u>, First Am. Mot. at 1. ("The Petitioner submits that had counsel adequately investigated this matter he would have discovered that the prosecution strategically dismissed the aforementioned robbery against everyone charged . . . in violation of <u>Brady</u> and <u>Giglio</u>.").)

Counsel's decision to discontinue a potentially damaging line of questioning was objectively reasonable. Accordingly, Petitioner's ineffective assistance of counsel claim regarding the dismissed robbery charges is denied.

### 5. Failure to Object to the Trial Court's Jury Instruction that a Hobbs Act Robbery is a Crime of Violence

Petitioner claims that Counsel was ineffective for failing to object to the trial court's jury instruction that a Hobbs Act robbery constitutes a crime of violence. (See Second Am. Mot. at 1.) Petitioner relies on the same facts and arguments proffered for his claims regarding the validity of his Hobbs Act robbery charges generally. (See id.) As stated above, Hobbs Act robbery qualifies as a crime of violence; therefore, the Court denies Petitioner's argument.

### 6. Ineffective Assistance at Sentencing Regarding Double Jeopardy

Petitioner also alleges that Counsel was ineffective during sentencing by failing to object to the sentence imposed for Count Sixteen and the punishment imposed for Count Twenty-Five as violations of double jeopardy. (See Pet. Mot. at 1.) As explained above, Petitioner's sentence for Count 16 was in compliance with the law; therefore, Petitioner's Counsel could not have been ineffective for failing to assert the double jeopardy argument. Further, Petitioner received a special

assessment fee of $100 for Count Twenty-Five. Even if Counsel failed to object to this punishment, the error was not prejudicial as Petitioner received a life sentence on Count Twenty-Four. Accordingly, Petitioner's ineffective assistance of counsel claim grounded in Counsel's failure to object to the punishment for Count Twenty-Five fails.

**IV.  Conclusion**

For the foregoing reasons, Mr. Lee's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 is granted in part and denied in part. The Government shall inform the Court by letter within fourteen days on how it proposes to proceed. Mr. Lee may respond by letter within twenty-one days of the Government's letter.

The Clerk of the Court is directed to close the open motions (dkt. nos. 713, 731, and 943 in case no. 07-CR-00003 and dkt. nos. 7 and 32 in case no. 18-CV-1856) and close case number 18-CV-1856. The Clerk of the Court shall mail a copy of this order to Mr. Lee.

**SO ORDERED.**

Dated:     August 25, 2023
           New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge